UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| PIERRE GRENIER, | ) |
|     Plaintiff, | ) ) ) |
|         v. | ) ) Case No. 23-cv-30011-KAR |
| CITY OF SPRINGFIELD, et al., | ) ) |
|     Defendants. | ) ) ) |

MEMORANDUM AND ORDER REGARDING DEFENDANTS' PARTIAL MOTION
TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT and PLAINTIFFS'
MOTION TO PARTIALLY NOT OPPOSE THE DEFENDANTS' PARTIAL MOTION TO
DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT
(Dkt. Nos. 20 & 24)

ROBERTSON, U.S.M.J.

I.  Introduction

Currently before the court is a partial motion to dismiss filed by the defendants City of Springfield ("City") and Bernard Calvi in his personal capacity and his official capacity as Fire Commissioner of the City ("Calvi") (collectively, "Defendants"), seeking dismissal of certain claims stated in the Second Amended Complaint ("SAC") of the plaintiff, Pierre Grenier ("Plaintiff"),[1] in connection with his employment as a firefighter with the City. Plaintiff asserts that Defendants discriminated against him based on his age and his status as a veteran and a disabled individual, and that Calvi interfered with Plaintiff's exercise of his civil rights and his contractual relationship with the City. Defendants have moved to dismiss the claims against Calvi in Counts I, II, and III (federal claims of disability and age discrimination); against the City

---

[1] Plaintiff's wife, Michelle Grenier, was named as a plaintiff only in Count XIII, which stated a loss of consortium claim. Plaintiff has agreed to dismiss Count XIII, leaving him as the sole plaintiff.

1

and Calvi in Count V (claims under the Massachusetts Civil Rights Act); against Calvi in Count XII (negligence claim), against Defendants in Count XIII (loss of consortium claims); and against the City in Counts X and XI (alleging intentional interference with contractual or advantageous relations).[2]  The court heard the parties at oral argument.  For the reasons set forth below, including Plaintiff's agreement to dismiss certain claims, Defendants' motion is granted in part and denied in part.

II.     Facts Alleged in Plaintiff's Second Amended Complaint

Plaintiff is fifty-nine years old (SAC, Dkt. No. 16, ¶ 16).  He began working for the Springfield Fire Department ("Department") in 1997 and has served as a firefighter, acting lieutenant, lieutenant, acting captain, captain, district chief aide, and acting district chief (SAC, ¶¶ 18-19).  At all times material to the events alleged in the SAC, Calvi was the Springfield Fire Commissioner (SAC, ¶ 10).  Plaintiff is also a journeyman electrician and served in the United States Marine Corps (SAC, ¶¶ 22-24).  During his service in the Marine Corps, he suffered a service-connected injury and has been deemed fifty percent disabled by the Marine Corps (SAC ¶ 25).  During his years with the Department, Plaintiff has not been the subject of any

---

[2] Counts VI, VII, and VIII state discrimination claims pursuant to Mass. Gen, Laws ch. 151B ("Chapter 151B") on grounds of veteran status, disability, and age against both Defendants. Defendants moved to dismiss so much of Counts VI, VII and VIII as stated claims against Calvi on the ground that Plaintiff did not specify the sub-section or sub-sections of Chapter 151B under which he was proceeding, and not all subsections of Chapter 151B provide for individual liability (Dkt. No. 21 at 16-17). At the hearing on Defendants' partial motion to dismiss, Plaintiff moved orally for leave to amend his complaint at to counts VI, VII, and VIII to specify the statutory basis of his Chapter 151B claims against Calvi. The court granted the motion. Plaintiff filed Plaintiff's Amended Counts VI, VII, and VIII on November 16, 2023 (Dkt. No. 30). Defendants have not moved to dismiss Plaintiff's amended Counts VI, VII and VIII as they apply to Calvi. In these circumstances, the court deems as moot, and on this basis denies, so much of Defendants' motion as sought dismissal of Counts VI, VII, and VIII against Calvi.

disciplinary notices, and, prior to 2020, never heard any criticism of his performance (SAC, ¶ 21).

At some time not specified in the SAC, Plaintiff heard that Calvi "had animosity towards him as a disabled veteran and that he had a target on his back" (SAC, ¶ 31). On or around May 20, 2019, Plaintiff asked for a conference with Calvi and asked his district chief for a hearing regarding Calvi's animosity against him. On May 26, 2019, in a step that Plaintiff claims was not in accordance with departmental procedure, Calvi stopped by the fire station where Plaintiff was working, directed Plaintiff to a private room, and closed the door (SAC, ¶¶ 34-35, 37). Plaintiff told Calvi that Plaintiff had been told that Calvi "had animosity" against Plaintiff because Plaintiff was a disabled veteran. Calvi told Plaintiff that the report of animosity was not true and that Calvi was not aware of problems with Plaintiff's abilities, performance, or work ethic (SAC, ¶¶ 40-41). Calvi did not say anything else and did not give Plaintiff the opportunity to speak. Plaintiff understood that Calvi had given him a directive not to pursue the matter further (SAC, ¶¶ 42-43).

In November 2019, while Plaintiff was the acting district fire chief assigned to district 1, there was a fire in district 2. Plaintiff was the third commanding officer to arrive at the scene (SAC, ¶¶ 46-48). The first responsible commanding officer had already left. Calvi ordered Plaintiff to serve as incident commander at the fire scene (SAC, ¶¶ 49, 52). According to Plaintiff, this order was "unjust" and was taken in retaliation because he had raised a question about Calvi's animosity against him, and he had the "right to question this order" but he did not do so (SAC, ¶¶ 54-56). Plaintiff alleges that his interaction with Calvi at the fire scene lasted less than a minute and that Calvi did not give him any counseling or direction in how to handle the fire (SAC, ¶¶ 59-60).

In January 2020, the City had five openings for the district fire chief position in the Department. Plaintiff applied (SAC, ¶¶ 61-63). He was interviewed for the position on January 17, 2020. On January 29, 2020, Calvi telephoned Plaintiff and told him he had not been selected based on his performance in the interview (SAC, ¶¶ 64-66). In a follow-up letter, dated January 29, 2020, and attached as an exhibit to the SAC, Calvi explained as reasons for the hiring decisions that the candidates who had been selected had demonstrated their motivation by continuing their educations in the fire service field, while Plaintiff had focused his continuing education efforts on his side job as an electrician. Calvi was also critical of Plaintiff's lack of constructive suggestions in response to a question about improvements that could be made to the Department's operations (SAC, at 30-31). Of most significance according to Plaintiff, Calvi wrote that the other candidates had shown superior critical thinking skills when asked to analyze a fire scenario. Calvi stated that Plaintiff had made a critical and dangerous mistake in outlining his response to the hypothetical fire scenario that would have put lives at risk, and he indicated that it was the same mistake Plaintiff had made while he was in charge of the fire scene on November 19, 2019, when Calvi had had to step in to explain to Plaintiff why his decision was bad and very dangerous. Calvi noted his concern that Plaintiff had not learned from his mistake and still did not prioritize safety (SAC, at 30).

According to Plaintiff, of the five individuals who were selected as district fire chiefs in January 2020, one individual was not interviewed, and two ranked above and three ranked below Plaintiff in their performance on the civil service examination. The individuals who ranked below Plaintiff on the examination were not veterans, were younger than him, and were not disabled. While Plaintiff held a fire certification, none of these three who had been selected for the position did. In addition, one or more of the lower ranked candidates (the SAC is ambiguous

4

on how many) had failed drug test(s), had an altercation or altercations with a superior officer(s), and two had not had the experience of serving as acting district fire chief (SAC, ¶¶ 75-78).

III.   Discussion

A. Standard of Review

To survive a motion to dismiss, a "complaint must contain enough factual material to raise a right to relief above the speculative level … and state a facially plausible legal claim," *Guerra-Delgado v. Popular, Inc*., 774 F.3d 776, 780 (1st Cir. 2014) (quoting *Ocasio-Hernández v. Fortuño-Burset*, 640 F.3d 1, 12 (1st Cir. 2011)), "accept[ing] as true well-pleaded facts in the complaint and draw[ing] all reasonable inferences in the pleader's favor, *id*. (citing *Tasker v. DHL Ret. Sav. Plan*, 621 F.3d 34, 38 (1st Cir. 2010)).  In resolving a motion to dismiss, the court employs a two-step approach.  *Medina-Velázquez v. Hernández-Gregorat*, 767 F.3d 103, 108 (1st Cir. 2014) (citing *Ocasio-Hernández*, 640 F.3d at 12).

> First, [the court] "must separate the complaint's factual allegations (which must be accepted as true) from its conclusory legal allegations (which need not be credited)." *A.G. ex. rel. Maddox v. Elsevier, Inc*., 732 F.3d 77, 80 (1st Cir. 2013) (internal quotation marks omitted).  Second, [the court] "must determine whether the remaining factual content allows a reasonable inference that the defendant is liable for the misconduct alleged."  *Id*. (internal quotation marks omitted).

*Medina-Velázquez*, 767 F.3d at 108.  While "a complaint need not plead facts sufficient to make out a prima facie case or allege all facts necessary to succeed at trial," *id*. (citing *Carrero-Ojeda v. Autoridad de Energía Eléctrica*, 755 F.3d 711, 717-18 (1st Cir. 2014)), the elements of a prima facie case "form[] 'part of the background against which a plausibility determination should be made.'"  *Id*. (quoting *Rodríguez-Reyes v. Molina-Rodríguez*, 711 F.3d 49, 54 (1st Cir. 2013)).  "An analysis of plausibility is 'a context-specific task that requires the reviewing court to draw on its judicial experience and common sense.'"  *Id*. at 109 (quoting *Grajales v. P.R. Ports Auth*., 682 F.3d 40, 44 (1st Cir. 2012)).  That said, "the court may not disregard properly

pled factual allegations, 'even if it strikes a savvy judge that actual proof of those facts is improbable.'" *Ocasio-Hernández*, 640 F.3d at 12 (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 556 (2007)). "[A] court [may not] attempt to forecast a plaintiff's likelihood of success on the merits; 'a well-pleaded complaint may proceed even if … a recovery is very remote and unlikely.'" *Id*. at 12-13 (quoting *Twombly*, 550 U.S. at 556).

    B. <u>Plaintiff's Motion to Partially Not Oppose the Defendants' Partial Motion to Dismiss Plaintiff's Second Amended Complaint is granted</u>.

The court turns first to those portions of Defendants' motion that Plaintiff agrees should be allowed. First, Count V asserted claims under the Massachusetts Civil Rights Act, Mass. Gen. Laws ch. 12, § 11I ("MCRA"). Plaintiff agrees that so much of Count V as asserted a MCRA claim against the City should be dismissed (Dkt. No. 24 at 1). Second, Count XII states a claim of negligent infliction of emotional distress and Count XIII states a loss of consortium claim on behalf of Michelle Grenier. Plaintiff agrees to dismiss these claims against Defendants (Dkt. No. 24 at 1). Third, Count IV alleges violations of the Civil Service Statute, Mass. Gen. Laws ch. 31, against both Defendants. Plaintiff agrees to dismiss the claims in Count IV against Defendants (Dkt. No. 24 at 2). Fourth, Counts X and XI allege interference with contractual relations against Defendants. Plaintiff agrees to dismiss so much of Counts X and XI as sought to state claims against the City (Dkt. No. 24 at 2). Fifth, Counts I, II and III purport to assert claims against Calvi in his personal and official capacity. Plaintiff agrees to dismiss the claims asserted against Calvi in his personal capacity (Dkt. No. 24 at 2).

    C. <u>The claims against Calvi in his official capacity in Counts I, II and III will be dismissed</u>.

Under federal and state law, claims against a municipal official such as Calvi in his official capacity are "deemed to be [claims] against the municipality itself." *Murphy v. Town of*

*Natick*, 516 F. Supp. 2d 153, 158-59 (D. Mass. 2007) (citing *Monell v. Dep't of Soc. Servs. of the City of New York*, 436 U.S. 658, 690 n.55 (1978)); *Henschel v. Worcester Police Dep't*, 455 F.2d 624, 624 (1st Cir. 1971) (per curiam)).[3]  Thus, Plaintiff's claims against Calvi in his official capacity in Counts I, II, and III are duplicative of his claims against the City asserted in those counts and are subject to dismissal with prejudice for this reason.  *See Briand v. Town of Conway*, 561 F. Supp. 3d 188, 197 (D.N.H. 2021) ("Where a plaintiff sues municipal officers and the officers' municipality in the same action, the claims against the municipal officers in their official capacities are redundant and may properly be dismissed.") (citing *Decotiis v. Whittemore*, 635 F.3d 22, 26, 38 (1st Cir. 2011)).

In addition, there is no individual liability under the Americans with Disabilities Act ("ADA") (Count I), *see Román-Oliveras v. P.R. Elec. Power Auth. (PREPA)*, 655 F.3d 43, 50-52 (1st Cir. 2011) (holding, as a matter of first impression in the First Circuit, that there is no individual liability under the ADA); the Rehabilitation Act (Count II), *see Pollard v. Georgetown Sch. Dist.*, 132 F. Supp. 3d 208, 226 (D. Mass. 2015) (the court dismissed the Rehabilitation Act retaliation claims against the individual defendants with prejudice because individuals cannot be held liable for such claims); or the Age Discrimination in Employment Act (Count III), *see Rivera-Camacho v. Sociedad Pro Hosp. del Niño, Inc.*, CIVIL NO. 20-1706

---

[3] To the extent Plaintiff seeks to assert claims against the Department in addition to his claims against the City by naming Calvi in his official capacity, any such strategy would not work.  The Department is a sub-division of the City, not a separate suable entity.  *See Henschel*, 445 F.2d at 624; *Murphy*, 516 F. Supp. 2d at 158-59.

(RAM), 2021 WL 5314316, at *2 (D.P.R. Nov. 5, 2021) (holding, as have most courts, that there is no individual liability under the ADEA).

For these reasons, the claims against Calvi in his official capacity in Counts I, II and III will be dismissed with prejudice.

    D. <u>The court will deny defendants' request to dismiss Plaintiff's MCRA claim against Calvi without prejudice to reconsidering dismissal on a motion for summary judgment</u>.

"The Massachusetts Civil Rights Act, requires a Plaintiff to demonstrate that '(1) his exercise or enjoyment of rights secured by the Constitution or laws of either the United States or the Commonwealth, (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by 'threats, intimidation, or coercion.'" *Meuser v. Fed. Express Corp.*, 564 F.3d 507, 516 (1st Cir. 2009) (quoting *Bally v. Northeastern Univ.*, 532 N.E.2d 49, 51-52 (Mass. 1989); citing cases). "To prevent the act from establishing a 'vast constitutional tort,' the Legislature has 'explicitly limited the [act's] remedy to situations where the derogation of secured rights occurs by threats, intimidation or coercion.'" *Gallagher v. South Shore Hosp., Inc.*, 197 N.E.3d 885, 904 (Mass. App. Ct. 2022) (alteration in original) (quoting *Currier v. Nat'l Bd. of Med. Examiners*, 965 N.E.2d 829, 838 (Mass. 2012)) (citations omitted). The term "threat," as used in the MCRA, "'involves the intentional exertion of pressure to another fearful or apprehensive of injury or harm,' while '[i]ntimidation' involves putting in fear for the purpose of compelling or deterring conduct.'" *Id.* (alteration in original) (quoting *Planned Parenthood League of Mass., Inc. v. Blake*, 631 N.E.2d 985, 990 (Mass.), *cert. denied*, 513 U.S. 868 (1994)). "Coercion" in this context is "'the application to another of such force, either physical or moral, as to constrain [them] to do against [their] will something they would not otherwise have done.'" *Id.* (alterations in original) (quoting *Planned Parenthood*, 631

N.E.2d at 990). Whether conduct constitutes threats, intimidation or coercion is measured by an objective standard. *See Meuser*, 564 F.3d at 518 n.10. A direct deprivation of rights, because it lacks the element of threats, intimidation, or coercion, is not actionable under the MCRA. *See Gallagher*, 197 N.E.3d at 904 (quoting *Buster v. George W. Moore*, 783 N.E.2d 399, 409 (Mass. 2003)); *Cocroft v. Smith*, 95 F. Supp. 3d 119, 128 (D. Mass. 2015) (stating that a direct violation of a protected right does not violate the MCRA because it is not an attempt to force someone to do something they are not required to do).

Defendants argue that Plaintiff's MCRA claims against Calvi should be dismissed because Plaintiff has not clearly identified a federal or state constitutional or legal right of which he has been deprived; his MCRA claims are duplicative of his discrimination claims and subject to dismissal on this basis; and, accepting as true Plaintiff's allegations, he has not identified any act by Calvi that rises to the level of threats, intimidation or coercion (Dkt. No. 21 at 2-10). For his part, Plaintiff identifies his right to invoke remedies under the Department's policies and procedures protected under a collective bargaining agreement ("CBA") to address Calvi's animosity to him, and his right to be "fairly and justly considered for promotion" (Dkt. No. 25 at 13-14). He identifies his interactions with Calvi at the fire station on May 26, 2019, and at the fire scene on November 19, 2019, as times when Calvi engaged in threatening or coercive conduct.

In the court's view, while some or all of these contentions may very well have merit, they are more properly considered on a more complete factual record at the summary judgment stage, particularly where discovery will be substantially similar whether or not these claims remain in the case. *See, e.g., Bianchi v. Kotkin*, Civil Action No. 2007-11960-PBS, 2009 WL 6040704, at *1 (D. Mass. Aug. 5, 2009). While Plaintiff's allegations are thin, he appears to claim that he

had a right, legally protected under Massachusetts law, to a hearing that could have protected him against adverse action by a Department Fire Commissioner who was prejudiced against him. While the claim is tenuous as stated in the SAC, it is arguably not without some support in the caselaw. For example, in *Blasko v. Doerpholz*, Civil Action No. 15-30185-MGM, 2017 WL 1196647, at *5 (D. Mass. Mar. 30, 2017), the court identified contractual rights to a safe working environment and continued employment as examples of rights that might be protected under the MCRA. *See also Lawless v. Town of Freetown*, 63 F.4th 61, 67 (1st Cir. 2023) (noting that Massachusetts law protects a contractually ensured right to municipal employment).[4] Chapter 151B's antidiscrimination provisions would not protect any rights Plaintiff had as a Department employee who had contractual and due process protections by virtue of that status. To the extent the SAC states claims under the MCRA, those claims are not recast discrimination claims remediable exclusively – or at all - under Chapter 151B. *Contrast, e.g., Dyer v. East Coast Diners, LLC*, 33 F. Supp. 3d 82, 90 (D. Mass. 2014).

As to threats, intimidation, or coercion, while the allegations are again tenuous, Plaintiff alleges that Calvi, as Fire Commissioner, had complete authority over Department employees and was the final arbiter of decisions about promotion, discipline, and termination of employment. Drawing all inferences in Plaintiff's favor, a reasonable employee in his position might interpret Calvi's stop at the fire station after hearing that Plaintiff had set the wheels in motion for a formal hearing, was intended to intimidate or coerce Plaintiff into abandoning his

---

[4] The court does not accept Plaintiff's contention that any decision by Calvi to bypass Plaintiff for the position of district fire chief could be actionable under the MCRA as "a statement of intimidation and coercion" (Dkt. No. 25). To the extent the hiring decisions were not in compliance with governing law, it was a direct deprivation of a right, not an act aimed at encouraging Plaintiff to do something he was not lawfully required to do. *See, e.g., Cocroft*, 95 F. Supp. 3d at 128.

right to a hearing to protect his position and promotional aspirations in the Department.  This aspect of the claim also merits evaluation on a more complete factual record.

IV. Conclusion

For the foregoing reasons, Defendants' Partial Motion to Dismiss Plaintiffs' Second Amended Complaint is GRANTED as to Plaintiff's claims against both Defendants in Counts IV, XII, and XIII, as to the City in Counts V, X, and XI, and as to Calvi in his personal and official capacities in Counts I, II and III.  Defendants' Motion is DENIED as to Plaintiff's claims against Calvi in Count V, VI, VII, and VIII.  Michelle Grenier is DISMISSED as a plaintiff in the case.

It is so ordered.

Dated: January 10, 2024                    Katherine A. Robertson
                                           KATHERINE A. ROBERTSON
                                           U.S. MAGISTRATE JUDGE