UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |  |
|---|---|---|
| PIERRE GRENIER, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Case No. 3:23-cv-30011-KAR |
| | ) | |
| CITY OF SPRINGFIELD, MASSACHUSETTS | ) | |
| & BERNARD J. CALVI, | ) | |
| | ) | |
| Defendants. | ) | |

MEMORANDUM AND ORDER ON DEFENDANTS' MOTION FOR SUMMARY
JUDGMENT & MOTION TO STRIKE
(Dkt. Nos. 46 & 58)

ROBERTSON, U.S.M.J.

I.    Introduction

In the second amended complaint (Dkt. No. 16) and the amended complaint as to Counts

VI, VII, and VIII (Dkt. No. 30), plaintiff Pierre Grenier ("Plaintiff"), a captain in the Springfield

Fire Department ("SFD"), alleges that the defendants, the City of Springfield ("City"), and

Bernard J. Calvi ("Calvi"), the City's Fire Commissioner (collectively, "Defendants"), violated

the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12101, et seq. (Count I), § 503 of the

Rehabilitation Act,  29 U.S.C. § 793 (Count II); and the Age Discrimination in Employment Act

("ADEA"), 29 U.S.C. § 621 et seq. (Count III).  Plaintiff further alleges that the City and Calvi

violated Mass. Gen. Laws ch. 151B by discriminating against him based on his status as a

veteran (Count VI), his disability (Count VII), and his age (Count VIII) and by retaliating against

him (Count IX).  Finally, Plaintiff asserts claims against Calvi in his personal capacity for

violating the Massachusetts Civil Rights Act ("MCRA"), Mass. Gen. Laws ch. 12, § 11I (Count

1

V), and intentionally interfering with Plaintiff's employment (Count X) and contractual relations (Count XI).[1]  Defendants have moved for summary judgment on all remaining claims (Dkt. No. 46) and to strike portions of Plaintiff's Statement of Additional Facts (Dkt. No. 58).  The parties have consented to this court's jurisdiction (Dkt. No. 17).  *See* 28 U.S.C. § 636(c); Fed. R. Civ. P. 73.  For the reasons that follow, Defendants' motions are GRANTED.

II.    Defendants' Motion to Strike

"[T]he [c]ourt will first address [Defendants'] motion[] to strike, as the 'ruling[] [on that motion will] define the record on which summary judgment rests.'"  *Foregger v. Residential Credit Sols., Inc.*, Civil Action No. 12-11914-FDS, 2014 WL 1364788, at *3 (D. Mass. Apr. 4, 2014) (quoting *Livick v. The Gillette Co.*, 524 F.3d 24, 28 (1st Cir. 2008)).

Plaintiff offers the following three statements to prove discriminatory animus on Calvi's part:

- "I had heard that Defendant Calvi had animosity toward me as a disabled veteran and that I had a target on my back" (PSF ¶ 132; Dkt. No. 54-3 ¶ 18);

- "Plaintiff remembered conversations with [unidentified] District Chiefs regarding Calvi's animosity toward Plaintiff" (PSF ¶ 147); and

- "After the firehouse meeting with Calvi, Plaintiff was told by another Lieutenant that 'the fix was in' and that Marcell[i]n was going to bypass the Plaintiff (PSF ¶ 149).

Defendants argue that the court should strike these statements from the record because they are inadmissible hearsay offered for their truth (Dkt. No. 54).  Plaintiff did not oppose Defendants' motion to strike.

---

[1] On January 10, 2024, the court granted Defendants' motion to dismiss Counts IV, XII, and XIII (Dkt. No. 34).

"Generally, evidence that constitutes hearsay is not admissible at trial or for summary judgment purposes, unless it falls within one of the exceptions specified in the Federal Rules of Evidence." *Rojas-Ramirez v. BMJ Foods, Inc.*, Civil No. 09-1593 (GAG), 2011 WL 693621, at *3 (D.P.R. Feb. 24, 2011) (citing *Ramirez Rodriguez v. Boehringer Ingelheim Pharms., Inc.,* 425 F.3d 67, 76 (1st Cir. 2005) (internal citations omitted)). *See* Fed. R. Evid. 802. "A party who seeks admission of hearsay evidence bears the burden of proving each element of the exception that he asserts." *United States v. Bartelho*, 129 F.3d 663, 670 (1st Cir. 1997). Because Plaintiff has failed to oppose the motion to strike or otherwise show that the statements that he offers for their truth are admissible under exceptions to the hearsay rule, the court will not rely on the challenged statements at summary judgment. *See Planet Fitness Int'l Franchise v. JEG-United, LLC*, 633 F. Supp. 3d 484, 505 (D.N.H. 2022) (granting motion to strike hearsay statements when the opposing party failed to object) (citing *Travers v. Cotiviti, LLC*, C.A. No. 18-562 WES, 2022 WL 834168, at *3 (D.R.I. Mar. 21, 2022)).

In any event, so far as the court can determine in the absence of opposition, there are no exceptions to the hearsay rule that would make these statements admissible for their truth. *See* Fed. R. Evid. 805. The first two statements contain inadmissible hearsay statements of unidentified declarants. *See Vazquez v. Lopez-Rosario,* 134 F.3d 28, 35 (1st Cir. 1998) ("[T]he statement of an unidentified declarant is hearsay."). Even if the lieutenant in the third statement were named (Dkt. No. 54-2 at 18), the source of the lieutenant's information is not identified. *See Saccucci Auto Grp. v. Am. Honda Motor Co.,* 617 F.3d 14, 25 & n.9 (1st Cir. 2010) (rumor is inadmissible hearsay); *Pardo Hernandez v. Citibank, N.A.,* 141 F. Supp. 2d 241, 245 (D.P.R. 2001) ("This evidence is . . . inadmissible hearsay, and inherently unreliable, because it fails to

identify from whom [an identified person] 'heard' the allegedly defamatory statement.") (citing Fed. R. Evid. 403, 801(c)).  The court therefore grants Defendants' motion to strike.

III.    <u>Factual Background</u> [2]

The Springfield Fire Department ("SFD") is a City department (DSF ¶ 2; PSF ¶ 2).  Calvi is a City employee who was hired as the fire commissioner in January 2018 (DSF ¶¶ 3, 4; PSF ¶¶ 3, 4).  Plaintiff began working for the SFD in 1997 and was appointed as a captain in January 2011 (DSF ¶¶ 5, 6, 7; PSF ¶¶ 5, 6, 7).  In addition to holding the position of captain, Plaintiff has served as a firefighter, acting lieutenant, acting captain, district fire chief aide, and acting district fire chief (DSF ¶ 8; PSF ¶ 8).  He was the commanding officer during more than 1,000 emergencies and acted as a district fire chief for more than 550 hours (PSF ¶ 121; DRSF ¶ 121).

Plaintiff served in three combat deployments overseas after he joined the Marine Corps in 1984 (DSF ¶ 9; PSF ¶¶ 9, 123; DRSF ¶ 123).  In April 2018, Plaintiff was diagnosed with PTSD and depression related to his military service (DSF ¶¶ 10, 11; PSF ¶¶ 10, 11).  Plaintiff's medical conditions caused insomnia and disassociation at social gatherings (DSF ¶ 12; PSF ¶ 12).  In January 2019, the Veterans Administration ("VA") determined that Plaintiff was 50% disabled (PSF ¶¶ 126, 129; DRSF ¶¶ 126, 129; Dkt. No. 48-14).

A.    <u>The May 2019 Meeting Between Calvi and Grenier</u>

In May 2019, Plaintiff asked his superior officer, District Chief Arpin, for an opportunity to speak with Calvi.  Plaintiff asked for the meeting because another district chief, whom

---

[2] Unless otherwise indicated, the facts are drawn from Defendants' Statement of Facts ("DSF") (Dkt. No. 48); Plaintiff's Response to Defendants' Statement of Facts and Plaintiff's Statement of Additional Facts ("PSF") (Dkt. No. 54), and Defendants' Reply to Plaintiff's Additional Statement of Material Facts ("DRSF") (Dkt. No. 59).  Citation to page numbers are to the numbers assigned by the court's ECF system.

Plaintiff was not able to identify, told Plaintiff that Calvi "held animosity toward him" (DSF ¶¶ 27, 30-34; PSF ¶¶ 27, 30-34),[3] and because his "intuition" told him that Calvi "had it out for [him]" (DSF ¶¶ 35, 36; PSF ¶¶ 35, 36).

In response to Plaintiff's request, Calvi came to Plaintiff's fire station unannounced and spoke to Plaintiff privately in the captain's office (DSF ¶¶ 45, 46; PSF ¶¶ 45, 46, 136; DRSF ¶ 136). Plaintiff told Calvi that he had heard "through the grapevine" that Calvi had "an issue" with him (DSF ¶ 47; PSF ¶ 47). When Plaintiff indicated that he was a disabled veteran, he and Calvi discussed Plaintiff's status (DSF ¶ 47; PSF ¶¶ 47, 148; DRSF ¶ 148). This was the first time Plaintiff formally advised his superiors that he was disabled, but he did not describe his disability during his meeting with Calvi (DSF ¶ 54; PSF ¶ 54). Calvi denied having an issue with Plaintiff or his status as a disabled veteran and did not raise his voice, threaten, or intimidate Plaintiff (DSF ¶¶ 48, 49, 50, 51; PSF ¶¶ 48, 49, 50, 51). Plaintiff did not consider the conversation to be an official complaint of discrimination (DSF ¶ 53; PSF ¶ 53).

### B.    The Crystal Avenue Fire

On November 5, 2019, Plaintiff was acting as a district fire chief when the SFD responded to a house fire at 51 Crystal Avenue (DSF ¶ 55; PSF ¶¶ 55, 150; DRSF ¶ 150). Captain Brian Tetreault, the first ranking officer to arrive at the scene, was in command when Plaintiff arrived (DSF ¶¶ 56, 57; PSF ¶¶ 56, 57). SFD policy directed that an officer who intended to assume command of a fire scene first have a radio or face-to-face conversation with the officer he was relieving before announcing over the radio that he was assuming command (DSF ¶¶ 60, 61; PSF ¶¶ 60, 61; Dkt. No. 48-9 at 2-3). Plaintiff broadcast that he was in

---

[3] Plaintiff's statement, offered by Defendants, is an opposing party's statement made in his individual capacity, and is therefore excluded from the definition of hearsay. *See* Fed. R. Evid. 801(d)(2)(A).

command without speaking to Tetreault in person (DSF ¶ 63; PSF ¶ 63).  As a result, Plaintiff

was confused as to whether he or Tetreault was in command (DSF ¶ 64; PSF ¶ 64).

Calvi heard about the fire on the radio and responded to Crystal Avenue (DSF ¶ 58; PSF ¶

58).[4]  While en route, Calvi heard Plaintiff's radio announcement that he was at the scene and

was taking command (DSF ¶¶ 59, 68; PSF ¶¶ 59, 68).  When Calvi arrived, he observed water

from the mainstream being sprayed on the fire from outside (DSF ¶ 65; PSF ¶ 65).  The

mainstream water spray posed a danger to firefighters who were entering the building (DSF ¶ 65;

PSF ¶ 65).  Calvi approached Plaintiff, asked why the mainstream was being used while

firefighters were entering the building, and ordered the mainstream to be shut off (DSF ¶ 66; PSF

¶ 66).  Calvi then asked Plaintiff to identify his next priority in extinguishing the blaze (DSF ¶

66; PSF ¶ 66).  Because Plaintiff had not spoken to Tetreault and was unsure of his status, he told

Calvi he was not the incident commander (DSF ¶¶ 64, 67; PSF ¶¶ 64, 67).  Calvi was confused

because he had heard Plaintiff's radio announcement to the effect that he was assuming

command (DSF ¶ 68; PSF ¶ 68).  When Plaintiff asked Calvi if he (Calvi) was taking command,

Calvi, in the exercise of his discretion as fire commissioner, told Plaintiff that he (Plaintiff) was

_____

[4] Pursuant to Local Rule 56.1, a party opposing a motion for summary judgment must "include a
concise statement of the material facts of record as to which it is contended that there exists a
genuine issue to be tried, with page references to affidavits, depositions and other
documentation."  "Material facts of record set forth in the statement required to be served by the
moving party will be deemed for purposes of the motion to be admitted by opposing parties
unless controverted by the statement required to be served by opposing parties." L.R. 56.1.
Accordingly, where Plaintiff has indicated that he is "without sufficient knowledge to admit nor
deny" certain of Defendants' alleged facts, see, e.g., PSF ¶¶ 58, 90, 118, the court deems those
alleged facts to be undisputed.  *See Chapman v. Finnegan*, 950 F. Supp. 2d 285, 291 n.3 (D.
Mass. 2013) ("A party opposing summary judgment cannot create a genuine issue of fact by
denying statements, which the moving party contends are undisputed and supported by sufficient
evidence, on the basis that he lacks knowledge and information to admit or deny the statement").

in charge (DSF ¶¶ 69, 70; PSF ¶¶ 69, 70, 157; DRSF ¶ 157).  Plaintiff's conversation with Calvi

lasted less than a minute (PSF ¶ 161; DRSF ¶ 161).

    C.    <u>Plaintiff's Interview and Calvi's Decision on Promotions</u>

In May 2018, Plaintiff took the Civil Service examination for promotion to district fire

chief (DSF ¶¶ 14, 16; PSF ¶¶ 14, 16).  Promotions within the SFD are governed by the Civil

Service statutes in Mass. Gen. Laws ch. 31 (DSF ¶ 15; PSF ¶ 15).  When the SFD needs to fill

empty positions, it submits a request to the City for the number of positions that it needs to fill

(DSF ¶ 17; PSF ¶ 17).  Civil Service then generates a list of candidates based on their

examination scores (DSF ¶¶ 17, 18; PSF ¶¶ 17, 18).  The person with the highest score is ranked

first on the Civil Service list (DSF ¶ 18; PSF ¶ 18).  Veterans are given preference on the list with

disabled veterans given the highest preference followed by non-disabled veterans (DSF ¶ 19;

PSF ¶ 19).  The SFD notifies the candidates on the list who then have ten days to indicate that

they will accept the job if it is offered (DSF ¶¶ 21, 22; PSF ¶¶ 21, 22).  Thereafter, the SFD

schedules interviews (DSF ¶ 23; PSF ¶ 23).

In December 2019, the City authorized SFD to fill five district fire chief vacancies from

the Civil Service list (DSF ¶ 72; PSF ¶ 72).  The candidates who were considered for the district

chief positions in order of Civil Service ranking were: (1) Tyrone Denson; (2) Mark Savage; (3)

Plaintiff; (4) Brian Daley; and (5) Kurt Marcellin and Brian Tetreault (DSF ¶ 87; PSF ¶ 87).

Plaintiff's ranking was based on his examination score of 80 and his status as a disabled veteran

(DSF ¶¶ 19, 73, 75; PSF ¶¶ 19, 73, 75, 131; DRSF ¶131; Dkt. No. 48-10 at 2).

Calvi changed the composition of the interview panel to address a possible perception of

bias (DSF ¶¶ 83, 84, 85; PSF ¶¶ 83, 84, 85).  On January 7, 2020, the candidates were

interviewed by Calvi, Deputy Chief Hess, SFD CFO Erica Floyd, SFD Deputy Human

Resources Director Caitlyn Julius, Retired Longmeadow Fire Chief John Dearborn, Chicopee

Fire Chief Daniel Stamborski, SFD District Fire Chief of Training Robert McCaffrey, and Talia

Gee, the City's Chief Diversity and Inclusion Officer (DSF ¶¶ 80, 86; PSF ¶¶ 80, 86).  Each

panelist used a standard evaluation form, which asked the panelists to grade the candidates'

answers to ten questions on a scale of 1 (lowest) to 5 (highest) and take notes on the candidates'

answers to assess the interview performances (DSF ¶¶ 92, 93; PSF ¶ 92, 93; Dkt. No. 48-11; Dkt.

No. 48-12).

During Plaintiff's interview, Calvi asked Plaintiff to "tell [him] about [his] education"

(PSF ¶ 95).  In response, Plaintiff discussed his experience and education as an electrician which,

he believed, was related to his work as a firefighter (DSF ¶ 96; PSF ¶ 96).[5]  The candidates were

also questioned about a hypothetical fire scenario (DSF ¶ 97; PSF ¶ 97).  Plaintiff answered that

he would order a deck gun (mainstream) attack from outside the building, a search inside the

building from the B and C sides, and the use of hand lines while searching the interior (DSF ¶

98; PSF ¶ 98; Dkt. No. 48-11 at 4, 8, 10, 12, 14, 16, 18).  Plaintiff's proposal to use the

mainstream repeated the scenario that Calvi had countermanded when he arrived at the Crystal

Avenue fire scene (DSF ¶ 99; PSF ¶ 99).  Applicants were also asked about how the SFD could

improve (DSF ¶ 101; PSF ¶ 101).  Plaintiff answered that the SFD should stay on its current path

(DSF ¶ 102; PSF ¶ 102).

---

[5] Plaintiff cites to a page of his deposition transcript that is not included in the summary
judgment record to support an assertion that he tried to offer additional information about his
education but was unable to finish his answer.  The court declines to credit this unsupported
assertion.  *See Mehic v. Dana-Farber Cancer Inst., Inc.*, CIVIL ACTION NO. 15-12934-IT,
2018 WL 4189706, at *3 (D. Mass. Aug. 31, 2018).

Although all the panelists' scores and comments were considered, Calvi was the ultimate decisionmaker as to promotions (DSF ¶ 81; PSF ¶ 81). Plaintiff, who received the lowest score of all candidates (204), was not promoted to district chief (DSF ¶¶ 94, 104; PSF ¶¶ 94, 104). Three candidates who ranked lower than Plaintiff on the Civil Service list – Daley, Marcellin, and Tetreault – bypassed Plaintiff and were promoted (DSF ¶ 105; PSF ¶ 105). Calvi's January 29, 2020, letter to Plaintiff gave three reasons for the bypass (DSF ¶¶ 106, 107; PSF ¶¶ 106, 107; Dkt. No. 48-3): that Plaintiff's continuing education was limited to furthering his side job as an electrician (DSF ¶ 96; PSF ¶ 96); that his answer to the hypothetical fire scenario showed his failure to apply his real life experience and the coaching Calvi gave him at the Crystal Avenue fire (DSF ¶ 100; PSF ¶ 100); and that Plaintiff's vision for the future of the SFD – no changes necessary – showed a lack of understanding of the department and the ever-changing fire industry (DSF ¶ 103; PSF ¶ 103).

On February 6, 2020, Plaintiff discussed the VA's disability decision with his superior officer, Deputy Chief Mike Hess, and submitted a partially redacted version of the VA's January 2019 letter to the SFD personnel department for his employment file (DSF ¶ 108; PSF ¶¶ 108, 128, 129; DRSF ¶¶ 128, 129; Dkt. No. 48-14; Dkt. No. 67-1 at 2-5). Plaintiff never requested a reasonable accommodation for his medical conditions and never felt that he needed one (DSF ¶ 13; PSF ¶ 13).

Plaintiff appealed Calvi's bypass decision to the Civil Service Commission ("CSC") (DSF ¶ 109; PSF ¶ 109). The CSC upheld Calvi's decision (DSF ¶¶ 111, 112; PSF ¶¶ 111, 112; Dkt. No. 48-15). The Hampden County Superior Court affirmed the CSC's decision; in turn, the Massachusetts Appeals Court affirmed the Superior Court decision (DSF ¶¶ 113, 114, 116, 117; PSF ¶¶ 113, 114, 116, 117).

IV.    Standard of Review

"Summary judgment is appropriate where the moving party can show 'that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Deckers Outdoor Corp. v. Primark US Corp.*, Civil Action No. 1:23-cv-10233-ADB, 2025 WL 1424586, at *3 (D. Mass. May 16, 2025) (quoting Fed. R. Civ. P. 56(a)).  In making that determination, the court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." *Cochran v. Quest Software, Inc.*, 328 F.3d 1, 6 (1st Cir. 2003).  A fact is "material" if it has the "potential of changing a case's outcome," *Doe v. Trs. of Boston Coll.*, 892 F.3d 67, 79 (1st Cir. 2018), and "[a] dispute is 'genuine' if 'the evidence about the fact is such that a reasonable jury could resolve the point in the favor of the non-moving party.'"  *Sánchez v. Alvarado,* 101 F.3d 223, 227 (1st Cir. 1996) (citation omitted).

"The moving party bears the initial burden of establishing that there is no genuine issue of material fact." *Diaz v. City of Somerville*, 583 F. Supp. 3d 296, 306–07 (D. Mass. 2022), *aff'd,* 59 F.4th 24 (1st Cir. 2023) (citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986)).  "If that burden is met, the opposing party can avoid summary judgment only by providing properly supported evidence of disputed material facts that would require trial." *Id.* (citing *Celotex Corp.,* 477 U.S. at 324).  "A plaintiff opposing a properly documented summary judgment motion must carry 'the burden of producing specific facts sufficient to deflect the swing of the summary judgment scythe.'"  *Trahan v. Wayfair Maine, LLC*, 957 F.3d 54, 60 (1st Cir. 2020) (quoting *Hannon v. Beard*, 645 F.3d 45, 48 (1st Cir. 2011)).  "'Even in employment discrimination cases where elusive concepts such as motive or intent are at issue, summary judgment is appropriate if the non-moving party rests merely upon conclusory allegations, improbable inferences, and

unsupported speculation.'" *Brandt v. Fitzpatrick*, 957 F.3d 67, 75 (1st Cir. 2020) (quoting *Ray v. Ropes & Gray LLP*, 799 F.3d 99, 116-117 (1st Cir. 2015)).

     V.    <u>Analysis</u>

     A.    <u>Federal Claims of Discrimination under the ADA, the Rehabilitation Act, and the ADEA (Counts I, II, and III)</u>

     1.    The *McDonnell Douglas* Framework

Plaintiff argues that the City bypassed him for promotion because of his disability in violation of the ADA (Count I) and § 503 of the Rehabilitation Act (Count II) and his age in violation of the ADEA (Count III).  Where, as here, Plaintiff relies on circumstantial evidence of discrimination, the court analyzes the claims under the burden-shifting framework set out in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802-05 (1973).  *See Torres-Almán v. Verizon Wireless P. R., Inc.*, 522 F. Supp. 2d 367, 381 (D.P.R. 2007).  The plaintiff bears the initial burden of making out a *prima facie* case of discrimination.  *See Miceli v. JetBlue Airways Corp.*, 914 F.3d 73, 81 (1st Cir. 2019).  "If [the plaintiff] clears this low hurdle, a rebuttable presumption of discrimination arises, and the burden shifts to the employer to advance a legitimate, nondiscriminatory reason for its actions."  *Trahan,* 957 F.3d at 60 (citing *Mancini v. City of Providence,* 909 F.3d 32, 39 (1st Cir. 2018)).  "[The employer's] proffered reason must be one 'which, on its face, would justify a conclusion that the plaintiff was let go for a nondiscriminatory motive.'"  *Brader v. Biogen Inc.*, 983 F.3d 39, 55 (1st Cir. 2020) (quoting *Dávila v. Corporación De P.R. Para La Difusión Pública*, 498 F.3d 9, 16 (1st Cir. 2007)).  As long as the employer satisfies its second step burden, the burden shifts back to the plaintiff to offer ""'some *minimally sufficient* evidence, direct or indirect, both of pretext and of [the employer's] discriminatory animus.""'  *Id.* at 55–56 (quoting *Pearson v. Mass. Bay Transp. Auth.*, 723 F.3d 36, 40 (1st Cir. 2013)).  *See Lattimore v. Polaroid Corp.,* 99 F.3d 456, 465 (1st

Cir. 1996).  "A plaintiff can 'establish pretext by showing weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons such that a factfinder could' rationally find them unworthy of credence and hence 'infer that the employer did not act for the asserted [nondiscriminatory reasons].'"  *Taite v. Bridgewater State Univ., Bd. of Trs.*, 999 F.3d 86, 94 (1st Cir. 2021) (alteration in original) (quoting *Santiago-Ramos v. Centennial P.R. Wireless Corp.*, 217 F.3d 46, 56 (1st Cir. 2000) (internal quotation marks and citation omitted)).  *See Franchina v. City of Providence,* 768 F. Supp. 3d 312, 317-18 (D.R.I. 2024).  The *McDonnell Douglas* framework addresses the "burden of production, not . . . of persuasion; the task of proving discrimination remains [the plaintiff's] at all times."  *Mesnick v. Gen. Elec. Co.,* 950 F.2d 816, 823 (1st Cir. 1991).

### 2. Issue Preclusion Does Not Bar Plaintiff's Discrimination Claims

The City argues that issue preclusion bars Plaintiff from relitigating whether the City had a legitimate, nondiscriminatory reason for bypassing Plaintiff for promotion because the CSC decided the identical question in the City's favor (Dkt. No. 50 at 3-7).  The doctrine of issue preclusion provides that "'[w]hen an issue of fact or law is actually litigated and determined by a valid and final judgment, and the determination is essential to the judgment, the determination is conclusive in a subsequent action between the parties, whether on the same or a different claim.'"  *Dixon-Tribou v. McDonough*, 86 F.4th 453, 459 n.4 (1st Cir. 2023) (alteration in original) (quoting *Ríos–Piñeiro v. United States*, 713 F.3d 688, 691-92 (1st Cir. 2013) (emphasis omitted)).  "Preclusive effect is given not only to state judicial proceedings, but also to facts found by a 'state agency acting in a judicial capacity [that] resolves disputed issues of fact properly before it which the parties have had an adequate opportunity to litigate.'"  *Baez-Cruz v. Mun. of Comerio*, 140 F.3d 24, 28 (1st Cir. 1998) (alteration in original) (quoting *Univ. of Tenn.*

*v. Elliott,* 478 U.S. 788, 798 (1986)).  "In considering the preclusive effect of a Massachusetts

judgment, [the court] look[s] to Massachusetts law."  *Iantosca v. Step Plan Servs., Inc.,* 604 F.3d

24, 30 (1st Cir. 2010).

> Under Massachusetts law, a previously litigated issue is precluded when
> "(1) there was a final judgment on the merits in the prior adjudication; (2) the
> party against whom preclusion is asserted was a party (or in privity with a party)
> to the prior adjudication; and (3) the issue in the prior adjudication was identical
> to the issue in the current adjudication," was essential to the earlier judgment, and
> was actually litigated in the prior action.

*Diaz,* 59 F.4th at 30 (quoting *Degiacomo v. City of Quincy,* 63 N.E.3d 365, 369 (Mass. 2016)).

"The party invoking the doctrine of issue preclusion has the burden of demonstrating that the

doctrine applies . . . ."  *Day v. Kerkorian,* 814 N.E.2d 745, 750 (Mass. App. Ct. 2004).

Here, only the third element is disputed.  Thus, issue preclusion applies only if the City

establishes that the "'issue attempted to be raised in [this] case was the same issue which was so

necessarily involved in the first action that the judgment which was entered therein could not

possibly have been entered on any ground other than that this issue was adjudicated adversely to

[Plaintiff].'"  *McSorley v. Town of Hancock,* 417 N.E.2d 982, 985 (Mass. App. Ct. 1981) (quoting

*Wishnewsky v. Town of Saugus,* 89 N.E.2d 783, 786 (Mass. 1950)).  "Where an issue has not been

adjudicated, . . . '"issue preclusion" is inapplicable.'"  *Day,* 814 N.E.2d at 750 (quoting *Mongeau*

*v. Boutelle,* 407 N.E.2d 352, 357 (Mass. App. Ct. 1980)).

While the question is close, particularly in view of the First Circuit's *Diaz* decision, the

court concludes that the City has not shown that the CSC actually determined whether the

decision to bypass Plaintiff was discriminatory on the basis of disability or age.  *See id.* (citing

*Heacock v. Heacock,* 520 N.E.2d 151, 153 (Mass. 1988)).  In ruling on Plaintiff's appeal, the

CSC addressed whether the City "'sustained its burden of proving, by a preponderance of the

evidence, that there was reasonable justification for the [bypass].'"  *Boston Police Dep't v. Civ.*

*Serv. Comm'n*, 133 N.E.3d 322, 329 (Mass. 2019) (alteration in original) (quoting *Brackett v. Civil Serv. Comm'n*, 850 N.E.2d 533, 543 (Mass. 2006)). Calvi's letter to Plaintiff, which explained the reasons for the bypass, stated that, when compared to the three lower-ranked candidates, Plaintiff's lack of continuing education and subpar responses to two interview questions supported the bypass decision (Dkt. No. 48-3 at 2-3). The CSC agreed that Plaintiff's responses to the questions concerning the hypothetical fire scenario and his lack of vision for improvements to the SFD provided a sufficient basis for the City's bypass decision (Dkt. No. 48-15 at 11-16). Plaintiff did not raise the claims of disability and age discrimination in his CSC appeal that he now asserts in his complaint. *See Day*, 814 N.E.2d at 750. In finding that Calvi was reasonably justified in bypassing Plaintiff, the CSC addressed Plaintiff's "contention that . . . Calvi harbored an animus or bias against [him]," finding that "[w]hatever negative opinions . . . Calvi had formed, some of them accurate and some not, they are all based on his percipient knowledge and perception derived from [Plaintiff's] on-the-job performance and did not come from an unlawful bias or undue political or personal favoritism toward any of the other candidates" (DSF ¶ 110; Dkt. No. 48-15 at 15). The Massachusetts Appeals Court affirmed, stating that "Calvi articulated that he was most troubled by Grenier's failure to learn from on-the-job experience and by his lack of a vision for improvement of the department. These are legitimate employment considerations and do not demonstrate a personal or political bias against [Plaintiff] as an individual." *Grenier v. Civ. Serv. Comm'n.*, No. 23-P-457, 2024 WL 4470583, at *3 (Mass. App. Ct. Oct. 11, 2024) (unpublished). Because the CSC's decision did not address whether Plaintiff's disability or age were factors in Calvi's decision not to promote him, there is not a sufficient overlap between the issues before the CSC and the issues now before the court to bar Plaintiff from litigating his discrimination claims. *Compare Diaz,* 59 F.4th at 30 (finding that

14

adjudication of the plaintiff's Massachusetts disparate treatment claim under Mass. Gen. Laws ch. 151B was precluded by the decision of the Civil Service Commission because the plaintiff "sought to relitigate th[e] very same issue before the district court").

       3.       Disability Discrimination (Counts I and II) [6]

To establish a *prima facie* case of disability discrimination, Plaintiff must show by a preponderance of the evidence that he "'(1) has a disability within the meaning of the ADA; (2) is qualified to perform the essential functions of the job, with or without reasonable accommodations; and (3) was subject to an adverse employment action based in whole or part on his disability.'" *Sutherland v. Peterson's Oil Serv., Inc.*, 126 F.4th 728, 738 (1st Cir. 2025) (quoting *Ramos-Echevarría v. Pichis, Inc.*, 659 F.3d 182, 186 (1st Cir. 2011)).  Plaintiff bears the ultimate burden of proving discrimination motivated by his disability.  *See Tassinari v. Salvation Army,* 349 F.R.D. 10, 38 (D. Mass. 2025) (citing *Nunes v. Mass. Dep't of Corr.,* 766 F.3d 136, 144 (1st Cir. 2014)).

For purposes of the summary judgment motion, the City does not dispute that Plaintiff was disabled under the ADA, bypassed for promotion, and treated less favorably than non-disabled employees (Dkt. No. 50 at 12).  "[W]here, as here, the employer relies on [the plaintiff's relative lack of qualifications for the job] as its legitimate, nondiscriminatory reason for the [bypass], this [c]ourt may not 'consider the employer's alleged nondiscriminatory reason for taking an adverse employment action when analyzing the *prima facie* case . . . .'" *Diaz*, 583 F. Supp. 3d at 308 (quoting *Melendez v. Autogermana, Inc.*, 622 F.3d 46, 51 (1st Cir. 2010)

---

[6] Count II alleges that the City violated § 503 of the Rehabilitation Act (Dkt. No. 16 ¶¶ 99-105). Section 503 of the Rehabilitation Act does not authorize a private cause of action.  *See Healy v. Bergman,* 609 F. Supp. 1448, 1455 (D. Mass. 1985).  Because "[t]he same standards . . . apply to claims under the ADA and under the Rehabilitation Act," *Calero-Cerezo v. U.S. Dep't of Just.*, 355 F.3d 6, 12 n.1 (1st Cir. 2004), these claims are analyzed together.

(citations omitted)).  Plaintiff's twenty-three year tenure with the SFD, including a number of promotions, his experience as commanding officer in more than 1,000 emergencies and as an acting district fire chief for more than 550 hours sufficiently show that he was qualified for the district fire chief's position and raise an inference of discrimination (DSF ¶ 13; PSF ¶¶ 13, 119, 121; DRSF ¶¶ 119, 121).

The City "articulated legitimate nondiscriminatory reasons for not selecting [Plaintiff], including that other candidates performed better in the interviews, the panel members independently ranked other candidates higher, and [the commissioner] evaluated the rankings and independently made the final decision[]." *Echols v. Kalamazoo Pub. Sch.*, 508 F. App'x 392, 397 (6th Cir. 2012) (unpublished).  Of the six candidates who were interviewed, Plaintiff received the lowest numerical score (204).  All of the interviewers were consistent in this judgment.  Calvi pointed to Plaintiff's unsatisfactory responses to the questions about the hypothetical fire scenario and recommendations for improving the SFD (Dkt. No. 48-3 at 2-3; Dkt. No. 48-15 at 12-13).  As to the hypothetical fire scene, Plaintiff's answer received a low score from Calvi and the other firefighters on the interview panel (Dkt. No. 48-11 at 4, 6, 8, 10, 16).  Calvi was concerned because Plaintiff's response described the same scenario that worried Calvi when Calvi arrived at the Crystal Avenue fire.  Calvi was particularly troubled by Plaintiff's repetition of the dangerous mistake he made at the Crystal Avenue fire, his failure to learn from the coaching that Calvi provided, and the lack of critical thinking skills Plaintiff had displayed during his interview (DSF ¶ 100; PSF ¶ 100; Dkt. No. 48-3 at 2).

"'Poor performance in an interview is a well-recognized legitimate nondiscriminatory reason for failure to hire or promote.'" *Otero v. Port Auth. of N.Y. & N.J.,* Civil Action No. 19-12634 (RK) (JTQ), 2024 WL 3200024, at *9 (D.N.J. June 26, 2024) (citation omitted) (quoting

*Carr v. N. J.*, No. 09-913, 2012 WL 3757028, at *3 (D.N.J. Aug. 28, 2012), *aff'd*, 534 F. App'x

149 (3d Cir. 2013)); *see also Adamson v. Wyeth Pharms.*, No. Civ.A. 04-11623-DPW, 2005 WL

2323188, at *16 (D. Mass. Aug. 23, 2005) (plaintiff's "poor interview performance" was a

legitimate, non-discriminatory rationale for not hiring him).  The burden therefore shifts to

Plaintiff to establish that the City's stated reasons were a pretext for discrimination.

Plaintiff has not pointed to evidence from which a reasonable jury could infer that

Plaintiff's disability was a determinative factor in Calvi's decision to bypass him for promotion.

*Clifford v. Barnhart,* 449 F.3d 276, 281 (1st Cir. 2006).  First, Plaintiff's claim that Calvi could

not reasonably hold him responsible for the dangerous situation at the Crystal Avenue fire

ignores his failure to grasp the risk of the approach as demonstrated by his interview

performance.  Calvi was entitled to take this failure into consideration.  Second, "[s]ubjective

belief of discrimination is not sufficient to withstand summary judgment."  *Tyree v. Foxx*, 835

F.3d 35, 42 (1st Cir. 2016) (citing *Román v. Potter*, 604 F.3d 34, 40 (1st Cir. 2010)).  Thus,

Plaintiff's intuition of discrimination or the so-called feeling he got from Calvi are insufficient to

raise an inference of discriminatory animus as a matter of law.  *See Martinez v. Connecticut*, No.

3:13-cv-00457 (JAM), 2016 WL 730690, at *3 (D. Conn. Feb. 23, 2016) ("A plaintiff's

subjective belief, intuition, or suspicion that he or she has been the target of discrimination is not

competent evidence of a defendant's discriminatory animus.").  Third, Plaintiff's reliance on

Deputy Chief Guyer's refusal to permit him to attend training for district chiefs or to repeat the

incident management ("NIMS") course in early 2020 is equally deficient because Plaintiff failed

to submit his request in writing (DSF ¶¶ 40, 41, 42, 43; PSF ¶¶ 40, 41, 42, 43); captains who

served as acting district chiefs, like Plaintiff, were not required to attend training as a prerequisite

to being promoted and there is no evidence that Plaintiff was denied promotion because he

lacked NIMS training (DSF ¶ 39; PSF ¶ 39; Dkt. No. 48-8); and there is nothing before the court to indicate that Calvi, who was the decisionmaker, played a role in denying Plaintiff the opportunity to repeat the NIMS course (DSF ¶ 43; PSF ¶ 43; Dkt. No. 48-5 at 16).

Fourth, Plaintiff's attempt to rely on deficiencies in the qualifications of the candidates who bypassed him founders on the personal knowledge requirement that applies to an affidavit submitted in opposition to a summary judgment motion. Plaintiff claims that "[t]he lower ranked candidates have had issues with failing a urine analysis, physical altercations with superior officer's [sic] and two . . . of the lower promoted candidates did not serve as acting District Fire Chief" (PSF ¶ 175; Dkt. No. 53 at 12; Dkt. No. 54-3 ¶ 65). Defendants object that Plaintiff's allegations have not been shown to be based on personal knowledge (DRSF ¶ 175).

"An affidavit or declaration used to support or oppose a motion must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant or declarant is competent to testify on the matters stated." Fed. R. Civ. P. 56(c)(4). "In weighing the admissibility of such statements, 'personal knowledge is the touchstone,'" *Power v. Connectweb Techs., Inc.*, 740 F. Supp. 3d 63, 71 (D. Mass. 2024) (quoting *Perez v. Volvo Car Corp.*, 247 F.3d 303, 315 (1st Cir. 2001) (citation omitted)), because "[w]ithout any specific factual knowledge to support [a] statement, it is a mere conclusion that cannot serve as probative evidence." *Navedo* v. *Nalco Chem., Inc.*, 848 F. Supp. 2d 171, 179-80 (D.P.R. 2012). Plaintiff's representations about his colleagues fail under Rule 56(c)(4). Plaintiff has not shown how he acquired confidential personnel information about other employees and has not averred that these representations are based on his personal knowledge as opposed to station house gossip (Dkt. No. 54-3 at ¶ 65). With no showing about the source of Plaintiff's unsupported allegations about the successful candidates, Plaintiff is not entitled to rely on the allegations in his affidavit to

support his opposition to the summary judgment motion. *See Hickman v. City of Dayton,* 39 F. App'x 243, 245 (6th Cir. 2002) (plaintiff's conclusory affidavit, which stated that "similarly situated Caucasian employees with less experience and fewer qualifications" were promoted, was inadmissible on summary judgment because it did not contain "actual facts or personal knowledge as to the qualifications and experience of the other candidates"); *Teragram Corp. v. MarketWatch.com, Inc.*, No. Civ.A. 02-cv-11138-DPW, 2004 WL 3086883, at *12 (D. Mass. Dec. 29, 2004) (quoting *Perez,* 247 F.3d at 315–16).[7]

Finally, Plaintiff's contention that his interaction with Calvi at that May 2019 meeting could support a finding of discriminatory animus on Calvi's part is pure – and inadmissible – speculation. Plaintiff did not request a hearing concerning alleged discrimination (Dkt. No. 48-5 at 21-22), did not understand the meeting to be in support of grievance under the union contract (Dkt. No. 54-2 at 16-17), and does not dispute that the meeting was the first time that he advised Calvi that he had a disability (DSF ¶ 54; PSF ¶ 54). Plaintiff admits that Calvi told Plaintiff he had no problems with Plaintiff's job performance, attendance, disciplinary records, or status as a disabled veteran and that Calvi left the meeting only after Plaintiff indicated that he had nothing left to discuss (PSF ¶ 143; Dkt. No. 48-5 at 25-26). According to Plaintiff, Calvi did not raise his voice or threaten Plaintiff during their conversation and Plaintiff did not feel intimidated or that

---

[7] At Calvi's deposition, he was asked about a prior disciplinary notice he had issued to Marcellin, one of the candidates who bypassed Plaintiff for promotion. Calvi acknowledged the disciplinary notice and explained that he could not disclose or rely on it in the context of Marcellin's application for promotion because the warning was stale and, moreover, had been removed from Marcellin's personnel file as a resolution of a union grievance procedure, such that the warning could not be relied on for any personnel decision without almost certainly giving rise to a new union grievance and an unfair labor practice complaint that would likely be successful (Dkt. No. 59 at 19-22, 24). Plaintiff has not disputed any of this testimony, and, as a legitimate, nondiscriminatory consideration, it does not support an inference of discriminatory intent.

their discussion was inappropriate (DSF ¶¶ 49, 50, 51, 52; PSF ¶¶ 49, 50, 51, 52; Dkt. No. 48-5 at 26).  Nothing about Plaintiff's (or Calvi's) account of the May 2019 meeting supports an inference of discriminatory animus on Calvi's part.

In summary, Plaintiff's claim of disability discrimination relies on "[u]nsupported allegations and speculation" that do not establish a genuine issue of material fact sufficient to defeat summary judgment.  *Rivera–Colón v. Mills*, 635 F.3d 9, 12 (1st Cir. 2011).  The City's motion is granted as to Counts I and II.

> 3.    Age Discrimination (Count III)

Plaintiff also alleges age discrimination in violation of the ADEA (Count III), which makes it illegal for an employer "to . . . discriminate against any individual with respect to his compensation, terms, conditions, or privileges of employment, because of such individual's age." 29 U.S.C. § 623(a)(1).  To establish a *prima facie* case of age discrimination, the plaintiff must show: "1) he was at least 40 years old at the time of the discrimination; 2) he was qualified for the position; 3) he was denied the promotion; and 4) [the defendant] filled the position with a younger person of similar qualifications."  *Arroyo-Audifred v. Verizon Wireless, Inc.*, 527 F.3d 215, 219 (1st Cir. 2008).

Only the fourth element of the *prima facie* case is in play (Dkt. No. 50 at 14).  In January 2020, the ages of the six candidates who were considered for the position of district fire chief ranged from 49 to 62 (DSF ¶¶ 87, 88; PSF ¶¶ 87, 88; Dkt. No. 58-3 ¶ 2).  Plaintiff was 55 (Dkt. No. 58-3 ¶ 2).  The City argues that it did not fill the position with a younger person because two of the five candidates who were promoted are older than Plaintiff (Dkt. No. 50 at 14).  Marcellin, one of the three candidates who bypassed Plaintiff, was about a year older than Plaintiff (Dkt. No. 50 at 14; DSF ¶¶ 87, 88; PSF ¶¶ 87, 88; Dkt. No. 58-3 ¶ 2).  While this argument has some

force, "[t]he fact that one person in the protected class has lost out to another person in the protected class is . . . irrelevant, so long as he has lost out *because of his age.*"  *O'Connor v. Consol. Coin Caterers Corp.* 517 U.S. 308, 312 (1996).  Because two of the three candidates who bypassed Plaintiff were younger than he and a *prima facie* showing under *McDonnell Douglas* requires only a "modest showing" to raise an "inference of intentional discrimination," *Ahern v. Shinseki,* 629 F.3d 49, 54 (1st Cir. 2010), drawing all reasonable inferences in Plaintiff's favor, the court finds that Plaintiff has - albeit barely – established a *prima facie* case of age discrimination.  In any event, the court may "'bypass the prima facie case issue [where] it is clear that plaintiff has not mustered enough evidence for a reasonable jury to conclude that [the defendant's] stated reason' for the employment action was pretextual." *Cham v. Station Operators, Inc.*, 685 F.3d 87, 95–96 (1st Cir. 2012) (second alteration in original) (quoting *Freadman v. Metro. Prop. & Cas. Ins. Co.,* 484 F.3d 91, 100 (1st Cir. 2007)).

Such is the case here.  The City has proffered indicia of admissible evidence showing that Plaintiff's interview performance was a legitimate, nondiscriminatory reason for bypassing him for promotion to district fire chief.  Plaintiff has failed to marshal evidence that would justify a reasonable jury in concluding that the City's stated reasons for bypassing him were a pretext for age discrimination.  Beyond the *prima facie* case, Plaintiff has pointed to no evidence of discrimination because of age that undermines the Defendants' legitimate, nondiscriminatory reasons for the bypass decision.  Consequently, Defendants' motion for summary judgment is allowed as to Count III.

B.    <u>State Law Claims (Counts V through XI)</u>

The First Circuit has held that, when a trial court grants summary judgment on all of a plaintiff's federal claims, it is generally an abuse of discretion for a district court to retain

jurisdiction over the remaining state law claims.  *See, e.g., Wilbur v. Curtis*, 872 F.3d 15, 23 (1st Cir. 2017).  Accordingly, the state law claims will be remanded to the court from which they were removed.

VI.    Conclusion

For the foregoing reasons, the court GRANTS Defendants' motion to strike (Dkt. No. 58) and GRANTS Defendants' motion for summary judgment (Dkt. No. 46) as to Counts I, II, and III.  Defendants' motion for summary judgment is DENIED without prejudice as to Counts V through XI, which will be remanded to Superior Court Department of the Massachusetts Trial Court, Hampden County.

It is so ordered.

Date:  November 25, 2025                    Katherine A. Robertson
                                           KATHERINE A. ROBERTSON
                                           U.S. MAGISTRATE JUDGE